UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO EVANS,

        Petitioner,

v.                                    CASE NO. 05-CV-74130-DT
                                    HONORABLE NANCY G. EDMUNDS

RAYMOND BOOKER,

        Respondent.
_____/

## **OPINION AND ORDER DENYING HABEAS CORPUS PETITION**

Petitioner Mario Evans has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for second-degree murder and felon in possession of a firearm. Petitioner alleges that the admission at trial of his pretrial statement to the police violated his rights under the Fourth and Fifth Amendments to the United States Constitution. He also alleges that the prosecutor improperly used evidence of a previous conviction and prior contacts with the police as substantive evidence of guilt. The Court has determined that Petitioner's Fourth Amendment claim is not cognizable on habeas review, that his Fifth Amendment claim lacks merit, and that his prosecutorial-misconduct claim is procedurally defaulted. Consequently, the habeas petition must be denied.

**I. Background**

Petitioner was charged in Wayne County, Michigan with second-degree murder, Mich. Comp. Laws § 750.317, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission, or attempt to commit, a felony (felony firearm), Mich. Comp. Laws § 750.227b. The charges arose from allegations that Petitioner shot and

killed Kirk De Berry on Lathan Street in Detroit on February 6, 2001.  The trial court conducted an evidentiary hearing to determine whether Petitioner's admissions to the police were voluntary and admissible at trial.  At the conclusion of the hearing, the trial court found that Petitioner was advised of his constitutional rights and waived them.  The court denied Petitioner's motion to suppress evidence of his pretrial statement to the police.

Petitioner's statement to the police was read into the record at trial.  The statement included Petitioner's admission that he fired a shotgun at the victim and fired a second time when the victim turned and ran.

Other evidence against Petitioner included testimony from Kirk De Berry's family, who observed a portion of the crime from their home.  They claimed that three young men confronted Kirk in a nearby parking lot and shot him.  A medical examiner testified that Kirk De Berry died from multiple gunshot wounds.

Petitioner testified that he did not shoot or kill anyone.  He maintained that he signed a confession because he was tired of being at the police station and wanted to go home.  He also testified that Smith told him he could go home if he signed the statement.

On January 3, 2002, a Wayne County Circuit Court jury acquitted Petitioner of the felony firearm conviction, but found him guilty, as charged, of second-degree murder.  The trial court subsequently found Petitioner guilty of being a felon in possession of a firearm.[1]  The trial court sentenced Petitioner to 40 to 60 months in prison for the firearm conviction and 65 to 120 years in prison for the murder conviction.

Petitioner appealed as of right.  The Michigan Court of Appeals initially remanded the

---

[1] Petitioner waived his right to a jury trial on the felon-in-possession charge.

case to the trial court for an evidentiary hearing on whether Petitioner's statements to the police should have been suppressed as the product of an illegal arrest. The trial court held a hearing and concluded that the officers had probable cause to arrest Petitioner and that whatever evidence flowed from the arrest was admissible.

The Michigan Court of Appeals subsequently affirmed Petitioner's conviction, but directed the trial court to correct the judgment of sentence to make Petitioner's sentence run concurrently with an unrelated sentence that he was serving. *See People v. Evans*, No. 240357 (Mich. Ct. App. Mar. 18, 2004) (unpublished). On October 28, 2004, the Michigan Supreme Court denied leave to appeal. *See People v. Evans*, 471 Mich. 907; 688 N.W.2d 92 (2004) (table).[2]

Petitioner filed his habeas corpus petition on October 28, 2005. The grounds for relief read:

> I. The court below erred by refusing to suppress a confession Petitioner signed after 86 hours of what would become a more than four-day period of incommunicado confinement following his warrantless arrest and preceding a probable cause hearing.
>
>> A. Under the totality of the circumstances, the confession should have been suppressed as involuntary and therefore violative of Petitioner's Fifth Amendment right against self-incrimination.
>>
>> B. The confession should have been suppressed as the product of a Fourth Amendment violation under *Gerstein v. Pugh* and *Riverside Co. v. McLaughlin*.
>>
>> C. The error was not harmless.
>
> II. Petitioner Evans was denied a fair trial under both the federal and

---

[2] Justices Michael F. Cavanagh and Marilyn Kelly voted to grant leave to appeal.

> state constitutions when the prosecutor committed misconduct by
> misusing evidence of Petitioner's prior conviction and police
> contacts, properly admissible only to impeach, as proof of bad
> character and criminal propensity. In the alternative, the trial court
> erred by not giving a limiting instruction.

The Court has looked to Petitioner's state appellate court brief for a fuller understanding of these claims, because Petitioner did not attach a brief to his habeas petition.

Respondent urges the Court through counsel to deny the habeas petition on the grounds that Petitioner's claims are not cognizable on habeas review, are procedurally defaulted, or lack merit. Petitioner replies that his claims are cognizable and are not procedurally defaulted.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

4

prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

## III. Discussion

### A. Petitioner's Confession

#### 1. The Fourth Amendment Claim

Petitioner alleges that his confession should have been suppressed because it resulted from his detention for 86 hours without a probable cause hearing. Petitioner contends that his lengthy detention before being arraigned violated his rights under the Fourth Amendment to the United States Constitution.

In *Gerstein v. Pugh*, 420 U.S. 103 (1975), the Supreme Court held "that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest" and that "this determination must be made by a judicial officer either before or promptly after arrest." *Id*. at 114 and 125. In *Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Supreme Court stated that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id*. at 56.

Although Petitioner was held considerably longer than 48 hours before being arraigned, the Supreme Court has held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be

5

granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). For a "full and fair" opportunity to have existed, "the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (1985) (citing *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir. 1982)).

The trial court held a post-conviction evidentiary hearing on Petitioner's Fourth Amendment claim and determined that the police had probable cause to arrest Petitioner. The trial court noted that the victim's relatives provided a description of the three men involved in the crime, Petitioner fit one of the descriptions, and the police knew that Petitioner was the owner of the car connected to the shooting. The trial court concluded that Petitioner's arrest was legal and that his confession was admissible in evidence.

The Michigan Court of Appeals thoroughly analyzed Petitioner's Fourth Amendment claim during the appeal of right. It opined that the delay between Petitioner's arrest and the probable cause hearing was unreasonable, without justification, and a presumptive violation of the Fourth Amendment under *Riverside v. McLaughlin*. The court of appeals nonetheless concluded that there was probable cause to arrest Petitioner and that his arrest was legal.

Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court. Therefore, this Court is not required to consider the substantive merits of his claim. *Stone v. Powell* bars review of his Fourth Amendment claim.

### 2. The Fifth Amendment Claim

Petitioner alleges that his pretrial confession was inadmissible under the Fifth Amendment, because the confession was involuntary. He asserts that he was young (21 years old), had limited intelligence, and was held incommunicado for 86 hours before he confessed.

### a. Legal Framework

The Fifth Amendment is applicable to the States through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). It provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself . . . ."

"No single litmus-paper test for constitutionally impermissible interrogation has been evolved." *Culombe v. Connecticut*, 367 U.S. 568, 601 (1961). Factors that may be considered are: extensive cross-questioning by the police, undue delay in the arraignment, failure to caution a prisoner, refusal to permit communication with friends and legal counsel, the duration and conditions of detention, the attitude of the police toward the suspect, the suspect's physical and mental state, and pressures which influence the suspect's powers of resistance and self-control. *Id.* at 601-02; *see also Clewis v. Texas*, 386 U.S. 707, 711-712 (1967) (listing factors to be taken into consideration when determining whether a petitioner's confession was voluntary, including (1) whether he was advised of his constitutional rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), (2) whether numerous officers subjected him to prolonged interrogation designed to elicit a signed statement of "the truth" as the police viewed it, and (3) whether his faculties were impaired by inadequate sleep and food, sickness, and long subjection to police custody with little or no contact with anyone other than the police.

A confession made during a delay in the arraignment is not necessarily inadmissible; the

7

delay is merely one factor to be considered in determining voluntariness. *Lundberg v. Buchkoe*, 338 F.2d 62, 69 (6th Cir. 1964). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege." *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Miranda*, 384 U.S. at 444).

### b. The Evidentiary Hearing and State Court Rulings

The trial court held a pretrial hearing on the voluntariness of Petitioner's confession. The testimony presented at that hearing has been summarized by the state appellate court as follows:

> [P]olice officers testified that they advised defendant of his constitutional rights before questioning him, that defendant read the constitutional rights form and initialed by each number and signed the form, that defendant acknowledged understanding those rights, was cooperative and did not appear under the influence of alcohol or drugs. Further police testimony indicated that defendant did not ask to speak to a lawyer, was alert, not sleepy, did not complain about being tired, was eighteen or nineteen years old and had had previous contacts with the police, including arrests. There was also testimony concerning the delay in the arraignment. There is no evidence that the police subjected defendant to continuous or prolonged interrogation or intimidating police conduct during the detention, nor is there any indication in the record of physical abuse or threats of physical abuse. Defendant testified that he was twenty-one years old,[3] and while detained he was tired because he did not get much sleep due to the conditions where he was detained. He testified that he asked for an attorney on more than one occasion. Defendant admitted that the police advised him of his *Miranda* rights, that he could read and write, that his initials and signature were on the proffered documents, and stated that he just "said anything" so he could go home.

---

[3] Defendant's birth date was April 16, 1980, and he confessed on March 4, 2001.

8

*Evans*, Mich. Ct. App. No. 240357, at 3 (footnote in original).

Defense counsel argued at the conclusion of the hearing that a person might be persuaded to confess to anything if he was held at police headquarters without much sleep, was interrogated again and again, and was not very smart. The trial court responded that most suspects who are taken to police headquarters do not confess and, instead, deny committing the charged crime. The trial court stated that it did not think anybody would confess to killing someone simply because he was tired, hungry, or did not like the room he was in. The trial court believed the officers' testimony that they advised Petitioner of his rights and that Petitioner did not request an attorney. The court noted that Petitioner was not responsive during the hearing and that he "seemed to be groping for answers" and "making it up as he goes." (Tr. May 4, 2001, at 53.)

The Michigan Court of Appeals deferred to the trial court's determination of the credibility of witnesses. The court of appeals concluded from the totality of the circumstances surrounding Petitioner's statement to the police that the trial court did not err in finding the statement was voluntary.

### c. The Facts

The record indicates that Petitioner was arrested about 1:45 a.m. on March 1, 2001. He was under investigation for the murder in this case and for an unrelated murder in another case. About an hour after his arrest, Petitioner was interrogated by Sergeant Felix Kirk, who advised Petitioner of his constitutional rights. Petitioner signed a written waiver of his rights. He was cooperative and he verified that he understood the English language. He did not appear to be under the influence of alcohol or drugs. The interview was terminated without a statement because Sergeant Kirk got busy with other cases.

9

About 10:15 a.m. on the same day, investigator Tyrone Kemp re-read Petitioner's constitutional rights to him and took a statement from him. Petitioner apparently implicated himself in the incident, but claimed that someone else possessed the gun. Between March 1 and March 4, attempts were made to verify information provided in Petitioner's statement to Kemp and to locate people that Petitioner mentioned in his statement.

On March 4, 2001, at 12:40 a.m., Sergeant Kirk once again advised Petitioner of his constitutional rights. Petitioner stated that he was willing to make another statement, and he again implicated himself in the crime after waiving his constitutional rights. He did not show the effects of being detained for three days, and he was not sleepy, according to Kirk. Nor did he say that he was tired.

Later, at 2:45 p.m. on the same day, Officer Isaiah Smith advised Petitioner of his constitutional rights and took a statement from Petitioner. For the first time, Petitioner admitted that he shot and killed the victim.

### d. Analysis

The facts as summarized above indicate that Petitioner's confession was obtained about 3 ½ days after he was arrested. He was not arraigned during that time, and the police questioned him four times. However, there were lengthy intervals between the interrogations, and Petitioner was advised of his constitutional rights each time that he was interrogated. He waived his rights each time, and there is no indication in the record that he was deprived of food or that the police were physically or mentally abusive toward him. Although he testified that he was unable to sleep much during that time due to noise from other inmates and the wooden bench that he was provided, he was given ample time to sleep. In fact, more than two days elapsed between the

10

second and third interviews.

Petitioner testified at the state court hearing that he had wanted to leave the police station and that he was not permitted to contact anyone during his detention. Officer Isaiah Smith admitted at the same hearing that Petitioner appeared to want to go home and that Petitioner was held longer than departmental rules and regulations allowed. Smith also conceded that the police were trying to locate a witness, who was needed to prove their case. Smith testified, however, that nobody wants to be at the station house and that Petitioner was neither "fresh as a daisy," nor "frayed on the edges." Petitioner was 21 years old at the time, and he had been arrested on other occasions. Officer Smith was unable to say that Petitioner showed the impact of being at the police station for 3½ days. He claimed that Petitioner was willing to deal with whatever was going to happen.

The Court finds it significant that Petitioner apparently admitted some involvement in the crime within ten hours of being arrested on March 1, 2001. This fact weighs in favor of finding that Petitioner's confession was not coerced by a delay in the arraignment or the fact that he was not permitted to make any telephone calls. Moreover, the trial court determined at the post-conviction hearing that there was probable cause to arrest Petitioner before he was interrogated. The court noted that relatives of the victim had provided a description of the perpetrators of the crime, that one of the descriptions matched Petitioner, and that the police knew Petitioner was the owner of the car used in the incident. The Michigan Court of Appeals agreed that there was probable cause for the initial arrest.

Although defense counsel insinuated that Petitioner was not very intelligent, Petitioner could read and write English, and he claimed to understand his constitutional rights. He also was

capable of testifying at the evidentiary hearing and at trial. The officers who interviewed him claimed that Petitioner was cooperative and comfortable talking with them. Petitioner informed Officer Smith that his statements were voluntary and freely made, that he was not promised anything for making a statement, and that he had not been mistreated while held in police custody.

To the extent that the trial court found Petitioner's allegations at the pretrial suppression hearing to be incredible, this Court is required to give special deference to the trial court's resolution of the credibility issue. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). This is particularly true where the trial court makes factual determinations at a suppression hearing. *Ramonez v. Berghuis*, __ F.3d __, __, No. 06-1852, 2007 WL 1730096, at *8 (6th Cir. June 18, 2007).

The Court concludes from the totality of the circumstances that Petitioner's confession was voluntary, knowing, and intelligent. Therefore, the state appellate court's conclusion -- that Petitioner's confession was voluntary -- did not result in an objectively unreasonable decision. Petitioner has no right to relief on the basis of his Fifth Amendment claim.

### B. "Other Acts" Evidence

Petitioner's final claim challenges the prosecutor's closing argument. The prosecutor called Petitioner a liar, a thief, and a murderer. The prosecutor also stated that Petitioner had previously been convicted, had prior contacts with the police, and knew how the system worked. Petitioner asserts that the prosecutor used his previous conviction and prior contacts with the police as substantive proof of bad character and propensity to commit a crime. Petitioner alleges in the alternative, that the trial court erred by not giving a limiting instruction in connection with

the prosecutor's comments.

### 1. Petitioner's Procedural Default

Respondent argues that Petitioner's claim about the prosecutor is procedurally defaulted. A procedural default is "a critical failure to comply with state procedural law. . . ." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Federal habeas courts may not consider a state prisoner's procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

#### a. The Procedural Rule and the State Court's Review

The state procedural rule in question here is Michigan's contemporaneous-objection rule, which requires defendants to make a timely and specific objection at trial in order to preserve a claim for appellate review. *See People v. Carines*, 460 Mich. 750, 761-65; 597 N.W.2d 130, 137-39 (1999); *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994). Failure to comply with a state's contemporaneous objection rule is an adequate state ground for denying relief. *See Engle v. Isaac*, 456 U.S. 107, 110 (1982) (concluding that state prisoners who failed to comply with an Ohio rule mandating contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas proceeding). "[T]he contemporaneous-objection rule has been lauded as few other procedural requirements have been." *Scott v. Mitchell*, 209 F.3d 854, 870 (6th Cir. 2000).

Petitioner violated Michigan's contemporaneous-objection rule by not objecting at trial to the prosecutor's closing argument. The Michigan Court of Appeals enforced the

13

contemporaneous-objection rule by stating that its review of Petitioner's claim was precluded by Petitioner's failure to object to the challenged remarks unless Petitioner demonstrated plain error affecting substantial rights. The contemporaneous-objection rule was an adequate and independent state ground for denying relief because Petitioner could have been apprised of the rule's existence at the time of the actions giving rise to his procedural default. *Cone v. Bell*, __ F.3d __, __, No. 99-5279, 2007 WL 1745294, at *9 (6th Cir. June 19, 2007). The rule was firmly established and regularly followed before Petitioner's trial. Therefore, in order for this court to consider the substantive merits of Petitioner's claim, he must establish "cause and prejudice" or a "miscarriage of justice."

### b. Cause and Prejudice

Petitioner has not offered any argument in support of a finding of "cause and prejudice." Instead, he asserts that the Michigan Court of Appeals analyzed his claim on the merits and, therefore, his claim is not procedurally defaulted.

The state court of appeals did say that Petitioner's claim about the prosecution's remarks had arguable merit. However, the court of appeals went on to say that the prosecutor's argument did not affect Petitioner's substantial rights and, therefore, under plain error analysis, Petitioner's claim failed. A state appellate court's review for plain error constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). The state court's alternative holding -- that reversal was unwarranted, given Petitioner's confession -- does not preclude this Court from concluding that Petitioner's claim is procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003). The Court also notes that the Michigan Supreme Court entered an unexplained order, which left the

14

procedural bar in place. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

### c. Miscarriage of Justice

Petitioner may overcome his procedural default in the absence of "cause and prejudice" by showing actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995), and *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). This narrow exception for fundamental miscarriages of justice requires the habeas applicant to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Murray v Carrier*, 477 U.S. 488, 496 (1986). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup*, 513 U.S. at 327.

Petitioner has not submitted any new evidence from which a reasonable juror could conclude that he was innocent of the charged offenses. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the merits of Petitioner's claim about the prosecutor's remarks. The claim is procedurally defaulted.

### 2. The Lack of a Limiting Instruction

Petitioner argues in the alternative that the trial court should have read a cautionary instruction to the jury when the prosecutor denigrated Petitioner and referred to Petitioner's prior conviction and contacts with the police. The Michigan Court of Appeals concluded that the trial court did not err in failing to provide *sua sponte* a limiting instruction on the admission of Petitioner's prior conviction.

Even assuming that Petitioner's claim about the lack of a limiting instruction is not

procedurally defaulted, the claim lacks merit. Petitioner did not request a limiting instruction, nor object to the absence of a limiting instruction. He therefore waived the right to a limiting instruction on "other acts" evidence. *United States v. Murzyn*, 631 F.2d 525, 531 (7th Cir. 1980). Although Petitioner claims that the trial court should have provided a limiting instruction *sua sponte*, the trial court was not obligated to do so under state law. Mich. Comp. Laws § 768.29; *People v. Chism*, 390 Mich. 104, 120-21; 211 N.W.2d 193, 200 (1973). Nor is there a federal constitutional right to a *sua sponte* instruction limiting the jurors' consideration of "other acts" evidence. *Frazier v. Mitchell*, 188 F. Supp. 2d 798, 811 (N.D. Ohio 2001), *reversed in part on other grounds by Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003). The decision whether to give a limiting instruction is discretionary with the trial judge and is not required by the Constitution in every instance. *Murray v. Superintendent, Kentucky State Penitentiary*, 651 F.2d 451, 454 (6th Cir. 1981). A limiting instruction may be required where the petitioner's substantial rights were affected. *United States v. Cooper*, 577 F.2d 1079, 1089 (6th Cir. 1978). The failure to give a limiting instruction did not affect Petitioner's substantial rights, given the admission of his confession in evidence and the fact that the jurors were told that the attorneys' arguments were not evidence.

      Finally, the Court notes that

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because there is no Supreme Court decision holding that the admission of similar acts evidence violates the Constitution, the state

court's decision on Petitioner's claim cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). *Id*. at 513.

**IV. Conclusion**

Petitioner's challenge to "other acts" evidence is procedurally defaulted, and his related claim about a limiting instruction lacks merit. Petitioner's Fourth Amendment claim is not cognizable on habeas review, and his Fifth Amendment claim lacks merit. Accordingly, the application for a writ of habeas corpus is DENIED.

                                                    s/Nancy G. Edmunds
                                                    Nancy G. Edmunds
                                                    United States District Judge

Dated: August 1, 2007

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 1, 2007, by electronic and/or ordinary mail.

                                                    s/Carol A. Hemeyer
                                                    Case Manager